FILED
NOV 14 2017
Clerk, U.S District Court
District Of Montana
Great Falls

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| In Re<br><br>MARY KAY DUFFIÈ,<br><br>Debtor.<br><br>MARY KAY DUFFIÈ<br><br>Appellant,<br>v.<br><br>STEVE GOTCHER AND SHARON GOTCHER,<br><br>Appellees. | CV 15-34-BU-BMM<br><br>ORDER |

The United States Bankruptcy Court for the District of Montana entered a Memorandum of Decision in this matter on June 3, 2015. (Doc. 19-8 at 118.) Judge Kirscher excepted $88,348.61 from Duffiè's bankruptcy discharge, pursuant to 11 U.S.C. § 523(a)(2)(A). *Id.* at 143. Appellant Mary Kay Duffiè filed a brief appealing the decision by Judge Kirscher on August 18, 2017. (Doc. 19.) Appellees Steve and Sharon Gotcher ("Gotchers") filed their response on September 25, 2017. (Doc. 24.) The Court conducted a hearing on October 26, 2017. (Doc. 28.)

1

## BACKGROUND

The Court will recite the facts only as necessary for this appeal. Duffiè, d/b/a SRO LIVE, purchased the Rialto Theater in Bozeman, Montana in November of 2010. (Doc. 19-1 at 40-49.) Duffiè also purchased the Covellite Theater in Butte, Montana in May of 2011. *Id.* at 31-39. Duffiè entered into Commercial Lease Agreements for both properties with Stephen Michael Rangel ("Michael"), her significant other. (Doc. 19-17 at 51-54.)

Michael met Steve and Sharon Gotcher during the summer of 2011. (Doc. 29 at 22.) Michael and Duffiè extended an offer to the Gotchers in August of 2011 to become co-owners of the two theaters. *Id.* at 23. Duffiè typed the Co-Ownership Agreement at this meeting. *Id.* at 12, 23. Duffiè and Michael signed the Co-Ownership Agreement at the meeting. *Id.* at 27. The Gotchers did not sign. *Id.* at 24.

Michael returned a few days later and presented the Gotchers with a second Co-Ownership Agreement. *Id.* at 25. Pursuant to the second agreement, Gotchers purchased a 10% equity interest in the Covellite Theater and the Rialto Theater in exchange for $140,000. *Id.* at 26. Gotchers and Stephen Michael signed this second Co-Ownership Agreement. *Id.* at 27. Duffiè typed the second Co-Ownership Agreement, but did not sign. *Id.* at 28. The second Co-Ownership Agreement, similar to the first, nevertheless listed her as a party in the recitals of the final page.

(Doc. 19-1 at 14-17.) The second Co-Ownership Agreement also contained a space for her signature. *Id.*

Gotchers made several payments totaling $87,000.00 under the second Co-Ownership Agreement. (Doc. 29 at 71.) Gotchers made these payments by taking cash advances on credit cards, selling a vehicle, and refinancing a building that the Gotchers own in Butte, Montana. *Id.* at 71-72. The parties' relationship eventually soured. Gotchers advised Michael and Duffiè in February 2012 that they wanted to discontinue the business relationship. (Doc. 19-4 at 65.) Gotchers further demanded a refund of all money that they had invested. *Id.* Gotchers stopped making payments under the second Co-Ownership Agreement and retained legal counsel. (Doc. 29 at 74.)

Gotchers filed an action against "Mary Kay Duffiè and Stephen Michael, d/b/a SRO Live" in Montana's Second Judicial District Court in Silver Bow County. The Clerk of Court entered judgments by default in the amount of $97,960.00 jointly against Duffiè and Michael on November 9, 2012. (Doc. 19-1 at 29.) Duffiè persuaded the state court to set aside her default. *Id.* at 27. Duffiè eventually responded to Gotcher's complaint and asserted counterclaims for slander of title, breach of contract, use of space, consulting and website, and lost profits. *Id.* at 19-26.

Duffiè sought protection under Chapter 13 of the Bankruptcy Code on December 7, 2013. (Doc. 19-3 at 17.) The bankruptcy court confirmed her Chapter 13 plan on April 30, 2014. (Doc. 19-3 at 13.) Gotchers commenced an adversary proceeding in United States Bankruptcy Court for the District of Montana on May 7, 2014. (Doc. 19-1 at 13.)

Duffiè retained local counsel and counsel from North Carolina to represent her. (Doc. 19-3 at 4.) Duffiè had to travel to California before the originally scheduled trial. Health problems made it difficult for Duffiè to return to Montana. (Doc. 19-8 at 74-76.) Judge Kirscher allowed Duffiè and her North Carolina based counsel to appear by video at various pre-trial proceedings. Judge Kirscher also granted Duffiè's motion for a 60-day continuance on the original trial date to accommodate her health issues. (Doc. 19-7 at 8.)

Judge Kirscher denied a motion by Duffiè to allow her and her North Carolina based counsel to appear by video at the trial. (Doc. 19-8 at 84.) Judge Kirscher cited Steve Gotcher's hearing difficulties as the basis for the denial. *Id.* Judge Kirscher held a trial regarding this matter on March 30, 2015. Duffiè's local counsel represented her at the trial. Duffiè did not appear.

## DISCUSSION

The Court possesses jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. 28 U.S.C.A. § 158(a)(1). Courts review

4

the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Kimura*, 969 F.2d 806, 810 (9th Cir. 1992). Courts review for abuse of discretion decisions made by bankruptcy courts concerning docket management. *In re Fletcher Intern., Ltd.*, 536 B.R. 551, 557 (S.D.N.Y. 2015) see also *In re Tukhi*, 568 B.R. 107, 116 (B.A.P. 9th Cir. 2017).

**The Court declines to dismiss summarily this matter for Duffiè's failure to comply with the Rules of Bankruptcy Procedure.**

Gotchers argue that Duffiè's appeal should be dismissed summarily due to her failure to file a Statement of the Case, or to have stated clearly the documents that relate to her appeal. (Doc. 24 at 16.) Duffiè originally failed to order a transcript of the trial. *Id.* Duffiè attempted to correct her mistakes in her reply brief. She now states that she ordered the trial transcript on October 11, 2017. The Court declines to dismiss Duffiè's procedural defaults and instead will address the merits of her appeals.

**The bankruptcy court acted within its discretion in refusing to allow Duffiè or her counsel to appear at trial by video in lieu of a physical appearance in the Butte courtroom.**

This issue involves the bankruptcy court's management of its docket. The Court reviews these actions for abuse of discretion. *In re Tukhi*, 568 B.R. at 115. Duffiè argues that the bankruptcy court abused its discretion by failing to comply the Americans with Disabilities Act ("ADA") by not allowing her and her North Carolina based counsel to appear at trial by video. (Doc. 19 at 17-18.) Duffiè

contends that her disability entitled her to a "right to due process" to appear by video. *Id.*

The ADA does not apply to the federal judiciary. *U.S. v. Wishart*, 146 Fed. Appx. 171, 173 (9th Cir. 2005). Duffiè pointed during oral argument to the United States District Court District of Montana's Guidelines for Providing Accommodations for Trial Participants with Communication Disabilities ("Guidelines"). These Guidelines recommend that courts in the District of Montana should provide reasonable accommodations to participants in federal court proceedings.

The Ninth Circuit determined that appellate courts regularly should defer to the bankruptcy court's "assessment of what action is need to facilitate the court's management of its own docket." *In re Tukhi*, 568 B.R. at 115. Judge Kirscher determined that Steve Gotcher suffers from hearing loss that cannot be improved. (Doc. 19-8 at 85.) Judge Kirscher determined, however, that Steve Gotcher comprehended the proceedings sufficiently when counsel was present in the courtroom. *Id.* Judge Kirscher acted within his discretion to manage his docket in deciding to not allow Duffiè to appear by video at the trial. Judge Kirscher previously had granted Duffiè a 60-day continuance of the trial to accommodate her difficulty in traveling from California to Butte for the trial. (Doc. 19-7 at 8.)

Duffiè knew that her decision to hire counsel from North Carolina could entail considerable expenses for his travel. Judge Kirscher possesses discretion to manage his docket. *In re Tukhi*, 568 B.R. at 115. Judge Kirscher did not abuse his discretion in denying the motion to appear by video in light of Steve Gotcher's hearing loss and the fact that Judge Kirscher previously had continued the trial for 60 days to allow Duffiè to seek medical treatment in California. (Doc. 19-7 at 8.)

**The Court agrees with the bankruptcy court's determination that Gotchers had proven the exception to discharge under 11 U.S.C. § 523(a)(2)(A) by a preponderance of the evidence. The Court further agrees with the bankruptcy court's decision to allow Gotchers to seek an exception from discharge against Duffiè even in light of the state court judgment against Michael.**

This issue involves both questions of fact and conclusions of law, therefore, the Court reviewed de novo. *In re Kimura*, 969 F.2d at 810. Section 523(a)(2)(A) excepts from discharge in bankruptcy a debt resulting from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The creditor bears the burden of proving by a preponderance of the evidence that § 523(a)(2)(A)'s applies. Duffiè misstates the different standards in her brief. (Doc. 19 at 30.) The preponderance of the evidence standard requires a lower evidentiary burden than the beyond a reasonable doubt standard.

The creditor must demonstrate the following to establish a claim for an exception to discharge under § 523(a)(2)(A): (1) the debtor made representations;

(2) that at the time the debtor knew the representations were false; (3) that the debtor made representations with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations. *Ghomesh v. Sabban*, 600 F.3d 1219, 1221 (9th Cir. 2010).

Judge Kirscher determined, and the record reflects, that Duffiè and Michael had represented that they owned the theaters jointly and were financially well off. (Doc. 29 at 44.) Duffiè further stated that she and Michael were going to contribute $1 million the purchase their 90% interest in the theater. (Doc. 29 at 24.) Duffiè and Michael actually contributed only $7,500. *Id.* at 45. Judge Kirscher rejected Duffiè's claim that she lacked knowledge of the falseness of these claims. Judge Kirscher noted that Duffiè had typed the original Co-Ownership Agreement at a meeting with Gotchers. (Doc. 19-8 at 123.) Judge Kirscher further noted that both Co-Ownership Agreements contained a signature line for Duffiè. *Id.* at 141.

Judge Kirscher found that sufficient facts existed to impute the fraud of Michael to Duffiè. *Id.* at 142. Judge Kirscher cited Duffiè's attempts to enforce the Co-Ownership Agreement against the Gotchers. Duffiè tried to enforce the Co-Ownership Agreement in a letter to the Gotchers in which she and Michael alleged that the Gotchers had failed to pay the remaining balance. *Id.* at 23. Duffiè additionally tried to enforce the Co-Ownership Agreement in the April 4, 2012,

8

Notices to Comply or Quit. *Id.* at 26. Duffiè demanded that the Gotchers immediately remit payment to SRO Live. *Id.* Finally, Duffiè sought to enforce the Co-Ownership Agreement against the Gotchers in the Montana state court action filed by Gotchers. (Doc. 19-1 at 19-26.)

Judge Kirscher determined that the totality of the circumstances indicated an intent to deceive. (Doc. 19-8 at 141.) Judge Kirscher found that the Gotchers justifiably had relied on Duffiè's representation that she would transfer a 10% ownership interest in the theaters to them. *Id.* at 132. Judge Kirscher further found that the Gotchers had suffered damages as the result of Duffiè's failure to transfer the 10% interest. *Id.*

A review of the record supports Judge Kirscher's determination that the Gotchers had proven by a preponderance of the evidence an exception to discharge under § 523(a)(2)(A). The Court agrees with the bankruptcy court's determination that the Gotchers could seek an exception to discharge against Duffiè in bankruptcy court even in light of the state court judgment against Michael. Gotchers acknowledged at oral argument that Duffiè and Michael stand jointly and severally liable for this debt.

## CONCLUSION

The Court has reviewed all issues raised by Duffiè in her appeal brief. The Court finds that the Gotchers' Complaint did not lack merit. The Court further finds that the Gotchers stated a claim upon which relief could be granted.

Accordingly, **IT IS ORDERED**:

1. The United States Bankruptcy Court for the District of Montana's Memorandum of Decision on June 3, 2015, is **AFFIRMED**.

DATED this 14th day of November, 2017.

_/s/ Brian Morris_
Brian Morris
United States District Court Judge